FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 17, 2017

SEAN F. McAVOY, CLERK

1

2

3

4

5          **UNITED STATES DISTRICT COURT**

6          **EASTERN DISTRICT OF WASHINGTON**

7   VICTORIYONDO JESSE MORALES,         No. 1:15-cv-03203-MKD

8             Plaintiff,                ORDER GRANTING PLAINTIFF'S
                                        MOTION FOR SUMMARY
9       vs.                             JUDGMENT AND DENYING
                                        DEFENDANT'S MOTION FOR
10  COMMISSIONER OF SOCIAL              SUMMARY JUDGMENT

11  SECURITY,                           ECF Nos. 19, 20

12            Defendant.

13          BEFORE THE COURT are the parties' cross-motions for summary

14  judgment.  ECF Nos. 19, 20.  The parties consented to proceed before a magistrate

15  judge.  ECF No. 6.  The Court, having reviewed the administrative record and the

16  parties' briefing, is fully informed.  For the reasons discussed below, the Court

17  grants Plaintiff's motion (ECF No. 19) and denies Defendant's motion (ECF No.

18  20).

19                           **JURISDICTION**

20          The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

1                **STANDARD OF REVIEW**

2        A district court's review of a final decision of the Commissioner of Social

3  Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

4  limited; the Commissioner's decision will be disturbed "only if it is not supported

5  by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153,

6  1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a

7  reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159

8  (quotation and citation omitted).  Stated differently, substantial evidence equates to

9  "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and

10  citation omitted).  In determining whether the standard has been satisfied, a

11  reviewing court must consider the entire record as a whole rather than searching

12  for supporting evidence in isolation.  *Id.*

13        In reviewing a denial of benefits, a district court may not substitute its

14  judgment for that of the Commissioner.  If the evidence in the record "is

15  susceptible to more than one rational interpretation, [the court] must uphold the

16  ALJ's findings if they are supported by inferences reasonably drawn from the

17  record."  *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district

18  court "may not reverse an ALJ's decision on account of an error that is harmless."

19  *Id*.  An error is harmless "where it is inconsequential to the [ALJ's] ultimate

20  nondisability determination."  *Id.* at 1115 (quotation and citation omitted).  The

1  party appealing the ALJ's decision generally bears the burden of establishing that

2  it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-410 (2009).

3  ### FIVE-STEP EVALUATION PROCESS

4  A claimant must satisfy two conditions to be considered "disabled" within

5  the meaning of the Social Security Act.  First, the claimant must be "unable to

6  engage in any substantial gainful activity by reason of any medically determinable

7  physical or mental impairment which can be expected to result in death or which

8  has lasted or can be expected to last for a continuous period of not less than twelve

9  months."  42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A).  Second, the claimant's

10  impairment must be "of such severity that he is not only unable to do his previous

11  work[,] but cannot, considering his age, education, and work experience, engage in

12  any other kind of substantial gainful work which exists in the national economy."

13  42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

14  The Commissioner has established a five-step sequential analysis to

15  determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §§

16  404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v).  At step one, the Commissioner

17  considers the claimant's work activity.  20 C.F.R. §§ 404.1520(a)(4)(i);

18  416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the

19  Commissioner must find that the claimant is not disabled.  20 C.F.R. §§

20  404.1520(b); 416.920(b).

1    If the claimant is not engaged in substantial gainful activity, the analysis

2    proceeds to step two.  At this step, the Commissioner considers the severity of the

3    claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii).  If the

4    claimant suffers from "any impairment or combination of impairments which

5    significantly limits [his or her] physical or mental ability to do basic work

6    activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c);

7    416.920(c).  If the claimant's impairment does not satisfy this severity threshold,

8    however, the Commissioner must find that the claimant is not disabled.  20 C.F.R.

9    §§ 404.1520(c); 416.920(c).

10    At step three, the Commissioner compares the claimant's impairment to

11    severe impairments recognized by the Commissioner to be so severe as to preclude

12    a person from engaging in substantial gainful activity.  20 C.F.R. §§

13    404.1520(a)(4)(iii); 416.920(a)(4)(iii).  If the impairment is as severe or more

14    severe than one of the enumerated impairments, the Commissioner must find the

15    claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d); 416.920(d).

16    If the severity of the claimant's impairment does not meet or exceed the

17    severity of the enumerated impairments, the Commissioner must pause to assess

18    the claimant's "residual functional capacity."  Residual functional capacity (RFC),

19    defined generally as the claimant's ability to perform physical and mental work

20    activities on a sustained basis despite his or her limitations, 20 C.F.R. §§

404.1545(a)(1); 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f); 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1).  If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. §§ 404.1560(c)(2); 416.920(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

Plaintiff filed for Title II disability insurance benefits on October 22, 2009 and Title XVI supplemental security income benefits on November 9, 2009.  Tr. 356-64.  He alleged a disability onset date of October 31, 2008 in both petitions. *Id.*  The applications were denied initially and upon reconsideration.  Tr. 166-72, 174-85.  Plaintiff appeared at a hearing before an Administrative Law Judge (ALJ) on December 8, 2011.  Tr. 76-102.  A supplemental hearing was held on May 1, 2012.  Tr. 41-75.  On June 14, 2012, the ALJ denied Plaintiff's claim.  Tr. 137-59.  The Appeals Council remanded the decision and directed the ALJ to further consider the opinion of Dr. Genthe.  Tr. 160-63.  Plaintiff appeared for another hearing before the ALJ on January 28, 2014.  Tr. 103-31.  The ALJ denied his claim on March 3, 2014.  Tr. 15-40.

At the outset, the ALJ determined that Plaintiff's date last insured was December 31, 2008.[1] Tr. 21.  At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since October 31, 2008.  Tr. 21.  At step two, the ALJ found Plaintiff has the following severe impairments: major depressive disorder, panic disorder, post-traumatic stress disorder, cognitive disorder, personality disorder, and alcohol abuse.  Tr. 21.  At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listed impairment.  Tr. 22.  The ALJ then concluded that Plaintiff has the RFC to perform a full range of work at all exertional levels with the following nonexertional limitations:

> The claimant cannot climb ladders, ropes or scaffolds. He is limited to only occasional exposure to hazardous conditions such as proximity to unprotected heights and moving machinery. He is limited to tasks that can be learned in 30 days or less involving no more than simple work-related decisions and few workplace changes. He is limited to superficial interaction with both the public and with co-workers. He would not perform well as a member of a highly interactive or interdependent work group.

Tr. 23.  At step four, the ALJ found that Plaintiff is not capable of performing past relevant work.  Tr. 30.  The ALJ determined at step five that there are jobs that

---

[1] In order to obtain disability benefits, Plaintiff must demonstrate that he was disabled prior to his last insured date.  *See* 42 U.S.C. § 423(c); 20 C.F.R. § 404.1520.

1   exist in significant numbers in the national economy that the Plaintiff can perform

2   given his age, education, work experience, and residual functional capacity such as

3   assembler production, cleaner, housekeeper, and mail clerk.  Tr. 31.  On that basis,

4   the ALJ concluded that Plaintiff was not disabled as defined in the Social Security

5   Act.  Tr. 32.

6        On September 24, 2015, the Appeals Council denied review, Tr. 1-4, making

7   the Commissioner's decision final for purposes of judicial review.  *See* 42 U.S.C.

8   1383(c)(3); 20 C.F.R. §§ 416.1481, 422.210.

9                                **ISSUES**

10       Plaintiff seeks judicial review of the Commissioner's final decision denying

11  him supplemental security income benefits under Title XVI and disability

12  insurance benefits under Title II of the Social Security Act.  ECF No. 19.  Plaintiff

13  raises the following issues for this Court's review:

14       1.  Whether the ALJ properly weighed the medical opinion evidence; and

15       2.  Whether the ALJ properly discounted Plaintiff's symptom claims.

16  ECF No. 19 at 7-19.

17                             **DISCUSSION**

18  **A.  Medical Opinion Evidence**

19       Plaintiff faults the ALJ for discounting the medical opinions of Stephen

20  Rubin, Ph.D. and Thomas Genthe, Ph.D.; crediting the opinion of Thomas

McNight, Ph.D.; and not considering the opinion of Tae-Im Moon, Ph.D.  ECF No. 19 at 7-16.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (nonexamining or reviewing physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id.*  "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted).  "If a treating or

examining doctor's opinion is contradicted by another doctor's opinion, an ALJ

may only reject it by providing specific and legitimate reasons that are supported

by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater,* 81

F.3d 821, 830-31 (9th Cir. 1995)).

The opinion of an acceptable medical source such as a physician or

psychologist is given more weight than that of an "other source." *See* SSR 06-03p

(Aug. 9, 2006), *available at* 2006 WL 2329939 at *2; 20 C.F.R. § 416.927(a).

"Other sources" include nurse practitioners, physician assistants, therapists,

teachers, social workers, and other non-medical sources. 20 C.F.R. §§

404.1513(d), 416.913(d). The ALJ need only provide "germane reasons" for

disregarding an "other source" opinion. *Molina*, 674 F.3d at 1111. However, the

ALJ is required to "consider observations by nonmedical sources as to how an

impairment affects a claimant's ability to work." *Sprague v. Bowen,* 812 F.2d

1226, 1232 (9th Cir. 1987).

### 1. Dr. Rubin

Dr. Rubin reviewed Plaintiff's medical record and testified at the

supplemental hearing on May 1, 2012. Tr. 47-57. He opined that Plaintiff had

major depressive disorder, mild; PTSD; and personality disorder absent substance

abuse. Tr. 27 (citing Tr. 50-51). He opined that Plaintiff would have a marked

problem in his ability to accept instructions and respond appropriately to criticism

from supervisors.  Tr. 53.  The ALJ afforded Dr. Rubin's opinion "significant

weight."  Tr. 27.

Plaintiff contends that the ALJ erred, first by misstating part of Dr. Rubin's

opinions regarding an assessed limitation, and further by failing to incorporate the

limitation into the RFC.  ECF No. 19 at 13.  Specifically, Dr. Rubin opined that

Plaintiff would have a marked problem in his ability to accept instructions and

respond appropriately to criticism from supervisors.  Tr. 53.  However, the ALJ

stated in the decision that Dr. Rubin opined a moderate problem in this area.

Tr. 27.  A moderate restriction is less severe than a marked restriction.  Plaintiff's

RFC restricted him to "superficial interaction with both the public and with

coworkers. He would not perform well as a member of highly interactive or

interdependent work group."  Tr. 23.  The RFC did not include any limitations

relating to Plaintiff's interactions with supervisors, despite the fact the ALJ fully

credited Dr. Rubin's opinions.

Defendant argues that a misstated limitation is harmless error so long as

substantial evidence supports the ALJ's RFC.  ECF No. 20 at 8 (*citing Bason v.*

*Comm'r of Soc. Sec. Admin.,* 475 F. App'x 217, 219 (9th Cir. 2012) (unpublished)

(finding no reversible error where the ALJ misquoted a physician's finding but the

record "overwhelmingly" supported the ALJ's RFC)).  This case is distinguished

from *Bason* because here the RFC did not incorporate either the underlying or the

1    misstated limitation.  *Bason,* 475 F. App'x at 219 (The ALJ misstated a limitation

2    that Plaintiff could stand for less than six hours in a workday by omitting the word

3    less.  The assessed RFC, based on "overwhelming" evidence in the record, limited

4    Plaintiff to light work, which is consistent with the underlying and the misstated

5    limitations).  Here, the opined limitation and the misstated limitation were entirely

6    omitted from the RFC.

7           Thus, the ALJ erred by failing to include in the RFC, without explanation, a

8    limitation identified by Dr. Rubin, whose opinion the ALJ fully credited.  Tr. 53.

9    This error cannot be considered harmless.  *See Molina*, 674 F.3d at 1115 (an error

10   is harmless only when it is "inconsequential to the [ALJ's] ultimate nondisability

11   determination").  Kimberly Mullinax, the vocational expert at the January 28, 2014

12   hearing testified that "the [Plaintiff] would need to work cooperatively with the

13   supervisor and respond appropriately to instructions, so if they had no ability to do

14   that, to respond to supervisors appropriately, then they would not be able to

15   maintain employment."  Tr. 27 (citing Tr. 130).  The medical expert at the hearing

16   on May 1, 2012, Dr. Rubin, testified that "the major issue is the relationship with

17   supervisors, and his relationship with coworkers and the public certainly is of

18   concern.  It speaks at the question whether Mr. Morales at 27 can make a change in

19   the way he could function, and I don't know about that."  Tr. 54.

20

1   Remand for further proceedings is appropriate because the ALJ gave "great

2   weight" to Dr. Dougherty's opinion which did not assess any limitations with

3   regards to Plaintiff's ability to work with supervisors.  Tr. 28 (citing Tr. 585-86).

4   Given the inconsistency regarding this limitation between the medical opinions of

5   Dr. Rubin and Dr. Dougherty, both of which the ALJ credited, he must address the

6   conflict in the first instance.  Thus, on remand, the ALJ must reconsider the

7   medical evidence, reassess the RFC, and if necessary, reconsider the hypothetical

8   posed to the vocational expert to ensure it properly includes all of the Plaintiff's

9   limitations supported by substantial evidence.  *See Osenbrock v. Apfel*, 240 F.3d

10  1157, 1165 (9th Cir. 2001) ("[a]n ALJ is free to accept or reject restrictions in a

11  hypothetical question that are not supported by substantial evidence.").

12  Next, Plaintiff argues that the ALJ erred because "contrary to Dr. Rubin's

13  opinion, the ALJ gave little weight to the GAF scores in the record."  ECF No. 19

14  at 14 (citing Tr. 29).  Clinicians use a GAF to rate the psychological, social, and

15  occupational functioning of a patient. The scale does not evaluate impairments

16  caused by psychological or environmental factors.  *Morgan v. Comm'r of Soc. Sec.*

17  *Admin.*, 169 F.3d 595, 598 (9th Cir. 1999).  The Commissioner has explicitly

18  disavowed use of GAF scores as indicators of disability. "The GAF scale . . . does

19  not have a direct correlation to the severity requirements in our mental disorder

20  listing."  65 Fed. Reg. 50746-01, 50765 (August 21, 2000).  Moreover, the GAF

scale is no longer included in the DSM–V.[2]  Dr. Rubin opined that Plaintiff's GAF

scores between 49 and 52 indicated "difficulty sustaining relationships, sustaining

employment, staying out of trouble."  Tr. 52.  The ALJ discounted Plaintiff's GAF

scores for two reasons.  First, GAF scores "may have been based on an

individual's self-reported symptomatology."  Tr. 29.  The ALJ properly discounted

Plaintiff's symptom testimony, as discussed *infra*.  Second, the ALJ found that "a

low GAF score might reflect difficulties in a wide range functional areas," while

"disability focuses on occupational functioning."  Tr. 29.  The ALJ properly

discounted in the Plaintiff's GAF scores in determining the Plaintiff's RFC; no

error occurred.

### 2. *Dr. Genthe*

Dr. Genthe, a licensed psychologist, performed a consultative examination

on Plaintiff on February 2, 2012.  Tr. 878-89.  Dr. Genthe diagnosed Plaintiff with

major depressive disorder, chronic; panic disorder with agoraphobia; PTSD;

---

[2] "It was recommended that the GAF be dropped from the DSM-5 for several

reasons, including its conceptual lack of clarity (i.e., including symptoms, suicide

risk, and disabilities in its descriptors) and questionable psychometrics in routine

practice."  DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 5TH Ed.

at 16.

cognitive disorder, not otherwise specified, cocaine dependence, in fill-sustained (sic) remission; alcohol dependence, in full-sustained remission; (by history) cannabis abuse/dependence in fill-sustained (sic) remission; and adult antisocial behaviors. *Id.* Dr. Genthe opined that Plaintiff's anxiety was managed mildly to moderately well with medication; but that his depression was not managed effectively with medication. Tr. 889. Dr. Genthe also completed a medical source statement form on February 28, 2012, in which he opined that Plaintiff had moderate restrictions in his ability to understand and remember simple instructions; the ability to make judgments on simple work-related decisions; understand and remember complex instructions; and respond appropriately to usual work situations and to changes in a routine work setting. Tr. 891-93. He also opined that Plaintiff had marked restrictions in his ability to understand and remember complex instructions; carry out complex instructions; the ability to make judgments on complex work-related decisions; interact appropriately with the public and interact appropriately with co-workers. *Id.* The medical source statement form included extreme restrictions in interacting appropriately with supervisors. Tr. 892. The ALJ gave Dr. Genthe's opinions little weight. Tr. 29.

Because Dr. Genthe's opinion was controverted by Dr. McKnight, Tr. 82-93, the ALJ must provide specific and legitimate reasons to reject it. *Bayliss*, 427 F.3d at 1216.

1    First, the ALJ discounted Dr. Genthe's opinions because he engaged in a

2  limited record review; particularly, he reviewed out-of-date records.  Tr. 29.  The

3  extent to which a medical source is 'familiar with the other information in [the

4  claimant's] case record' is relevant in assessing the weight of that source's medical

5  opinion, *see* 20 C.F.R. §§ 404.1527(c)(6); 416.927(c)(6); however, it is but one

6  factor the ALJ can consider in weighing a medical opinion.  *See* 20 C.F.R. §§

7  404.1527(c), 416.927(c); *see also Orn v. Astrue,* 495 F.3d 625, 631 (9th Cir. 2007).

8  Here, Dr. Genthe's February 2, 2012 report included a section titled "review of

9  records[.]"  Tr. 878.  In it, Dr. Genthe listed two records that he reviewed: a

10  psychological evaluation for DSHS provided by Dick Moen dated February 6,

11  2009 and a psychological evaluation performed by Dr. Dougherty dated April 23,

12  2009.  *Id.*  Both of these records were three years old at the time of Dr. Genthe's

13  examination.  Dr. Genthe's February 28, 2012 report did not indicate that he

14  reviewed any records in preparing the report.  The ALJ noted that Dr. Genthe's

15  record review was incomplete, and that later records would "shed more objective

16  light on the claimant's treatment, lack of treatment, and alcohol abuse."  Tr. 29.

17  The record supports the ALJ's conclusion that Dr. Genthe did not review more

18  recent records that tended to indicate alcohol abuse and other issues which may

19  have impacted his ultimate conclusion if considered.  While it cannot be the only

20  reason to reject a medical opinion, the ALJ's finding that Dr. Genthe did not

1  appropriately review Plaintiff's medical records is a specific and legitimate reason

2  to discount his opinion. *Bayliss*, 427 F.3d at 1216.

3       Second, the ALJ afforded Dr. Genthe's opinion little weight because he

4  credited Plaintiff's statements regarding sobriety that the ALJ determined were

5  false. Tr. 29. Medical evidence may be discounted based on drug or alcohol use

6  affecting the opinion. *See Morgan,* 169 F.3d at 603; *Andrew v. Shalala*, 53 F.3d

7  1035, 1042-43 (9th Cir. 1995) (affirming an ALJ's dismissal of medical evidence

8  because the provider credited false statements from the Plaintiff that his addiction

9  was well controlled). Here, Dr. Genthe credited as true Plaintiff's statements that

10  he had been abstinent from alcohol for two years. Tr. 880. Nowhere in Dr.

11  Genthe's report did he indicate that he questioned Plaintiff's claim of total

12  abstinence. *See* Tr. 878-89. However, when Plaintiff presented to Nurse Hennessy

13  on January 18, 2012 regarding insomnia, she noted that "patient has the following

14  risk factors for insomnia: use of alcohol." Tr. 919. This medical evidence directly

15  contradicts the Plaintiff's statements regarding alcohol to Dr. Genthe. The ALJ

16  also found evidence of drinking from several months after Dr. Genthe's

17  examination indicative that Plaintiff likely was not candid with Dr. Genthe

18  regarding his alcohol use. Tr. 26. In July 2012, Plaintiff presented to the

19  emergency room with an injured hand; his provider reported that he "[w]as

20  drinking and does not recall [the] incident well." Tr. 931. The fact that Dr.

Genthe's relied on inaccurate information related to alcohol abuse is a specific and legitimate reason to discount Dr. Genthe's medical opinion.

Third, the ALJ did not afford weight to Dr. Genthe's opinions because of the tension between his examination notes and his medical source statement. Tr. 29. A medical opinion may be rejected by the ALJ if it is conclusory, contains inconsistencies, or is inadequately supported. *Bray*, 554 F.3d at 1228; *Thomas v. Barnhart,* 278 F.3d 947, 957 (9th Cir. 2002). Dr. Genthe's medical source statement was based on the examination that he conducted on February 2, 2012. In the medical source statement, he lists the WMS-IV results as the basis for his opinion; he conducted the WMS-IV test during the February 2, 2012 examination. The ALJ determined that the evidence in the first report was inconsistent with the opined limitations listed in the medical source statement. Tr. 29. Dr. Genthe's opined limitations in the medical source statement demonstrate a severe impairment of Plaintiff's ability to work. Tr. 891-93. As detailed above, he noted a marked restriction in five areas: his ability to understand and remember complex instructions; carry out complex instructions; the ability to make judgments on complex work-related decisions; interact appropriately with the public and interact appropriately with co-workers. *Id.* A marked restriction is defined as a serious limitation with "substantial loss in the ability to effectively function." Tr. 891. Dr. Genthe further opined extreme restrictions in interacting appropriately with

supervisors.  Tr. 892.   However, many of Plaintiff's results from the underlying examination were average, or just below average.  For instance, his ability to remember short, simple instructions was fair.  Tr. 889.  His ability to sustain an ordinary routine without supervision was fair.  Tr. 889.  His ability to work with others without being distracted by them was fair.  Tr. 889.  Dr. Genthe opined that his anxiety was well-managed with medication.  Tr. 889.  Despite these results, Dr. Genthe assessed tremendous limitations in Plaintiff's ability to work.  The ALJ's determination that Dr. Genthe's examination notes are inconsistent with his medical source statement is a specific and legitimate reason to discount Dr. Genthe's opinions.  *Bayliss*, 427 F.3d at 1216.

Although the ALJ provided legally sufficient reasons for giving limited weight to Dr. Genthe's opinion, given the Court's finding above, the ALJ on remand must reconsider all the medical evidence.

*3.  Dr. McKnight*

Dr. McKnight is a reviewing physician that testified at Plaintiff's first hearing on December 8, 2011.  Tr. 82-93.  He opined that Plaintiff's mental health impairments were not severe absent substance abuse.  Tr. 27 (citing Tr. 87).  Dr. McKnight did not have the benefit of reviewing later medical evidence which supported Plaintiff does have severe mental health impairments absent substance

1  abuse.  Tr. 27.  The ALJ afforded Dr. McKnight's opinion "significant weight[.]"

2  Tr. 27.

3        Plaintiff contends that it was error for the ALJ to afford Dr. McKnight's

4  opinion "significant weight" because "[t]he later opinions of Dr. Genthe and Dr.

5  Rubin, supported by evaluations done by treating mental health therapists,

6  demonstrate that [Plaintiff] does have severe mental illness."  ECF No. 19 at 15.  It

7  is the role of the ALJ to resolve conflicts and ambiguity in the evidence.  *See*

8  *Morgan*, 169 F.3d at 599-600; *see also Sprague*, 812 F.2d at 1229-30.

9  Furthermore, "[i]t is not necessary to agree with everything an expert witness says

10  in order to hold that his testimony contains 'substantial evidence.' " *Russell v.*

11  *Bowen,* 856 F.2d 81, 83 (9th Cir. 1988) (citation omitted).  Here, in considering Dr.

12  McKnight's opinion, the ALJ noted that "additional evidence received after the

13  initial hearing indicates the claimant does have severe mental health impairments

14  absent substance abuse[.]"  Tr. 27.  The ALJ went on to conclude that "Dr.

15  McKnight's testimony supports finding the claimant's mental health impairments

16  are not disabling."  Tr. 27.  Plaintiff requests the Court substitute its own

17  judgement in lieu of the ALJ's.  The ALJ did not err in considering Dr.

18  McKnight's opinion because he acknowledged that Dr. McKnight did not have the

19  benefit of Plaintiff's entire medical record and weighed the medical evidence

20

1   accordingly.  However, on remand, the ALJ is required to reconsider all medical

2   evidence.

3        *4.  Dr. Moon*

4        Dr. Moon is an examining psychologist.  He examined Plaintiff on January

5   1, 2012 and opined that Plaintiff's "severe anxiety and depression interferes with

6   his ability to work."  Tr. 926-29.  He further opined that Plaintiff "is easily

7   overwhelmed, has difficulty remembering and following instructions."  Tr. 928.

8   The ALJ did not specify how much weight he assigned Dr. Moon's opinion.  *See*

9   Tr. 18-32.

10        Because Dr. Moon's opinion is contradicted by Dr. McKnight's, Tr. 82-93,

11   the ALJ must provide specific and legitimate reasons to reject it.  *Bayliss*, 427 F.3d

12   at 1216.

13        Plaintiff contends that the ALJ did not specifically address Dr. Moon's

14   opinion, which was reversible error.  ECF No. 19 at 16.  The opinions of

15   examining physicians and psychologists must be considered by the ALJ.  *See* 20

16   C.F.R. § 404.1527; *Lester,* 81 F.3d at 830.  An ALJ is not required to say magic

17   words in rejecting a medical opinion.  *Magallanes v. Bowen,* 881 F.2d 747, 755

18   (9th Cir. 1989) ("It is true that the ALJ did not recite the magic words, "I reject Dr.

19   Fox's opinion about the onset date because...." But our cases do not require such an

20   incantation. As a reviewing court, we are not deprived of our faculties for drawing

1   specific and legitimate inferences from the ALJ's opinion. It is proper for us to read

2   the paragraph discussing Dr. Pont's findings and opinion, and draw inferences

3   relevant to Dr. Fox's findings and opinion, if those inferences are there to be

4   drawn.")

5       The ALJ did not evaluate Dr. Moon's opinion.  *See* Tr. 18-32.  As this case

6   is being remanded, the ALJ is directed to specifically consider Dr. Moon's opinion

7   on remand and provide legally sufficient reasons for the evaluation of the opinion.

8   **B.  Adverse Credibility Finding**

9       Next, Plaintiff faults the ALJ for failing to provide specific findings with

10  clear and convincing reasons for discrediting his symptom claims.  ECF No. 19 at

11  16-19.

12      An ALJ engages in a two-step analysis to determine whether a Plaintiff's

13  testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must

14  determine whether there is objective medical evidence of an underlying

15  impairment which could reasonably be expected to produce the pain or other

16  symptom alleged."  *Molina*, 674 F.3d at 1112 (internal quotation marks omitted).

17  "The claimant is not required to show that [his] impairment could reasonably be

18  expected to cause the severity of the symptom [he] has alleged; [he] need only

19  show that it could reasonably have caused some degree of the symptom."  *Vasquez*

20  *v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

1    Second, "[i]f the claimant meets the first test and there is no evidence of

2    malingering, the ALJ can only reject the claimant's testimony about the severity of

3    the symptoms if she gives 'specific, clear and convincing reasons' for the

4    rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal

5    citations and quotations omitted). "General findings are insufficient; rather, the

6    ALJ must identify what testimony is not credible and what evidence undermines

7    the claimant's complaints." *Id.* (quoting *Lester*, 81 F.3d at 834); *Thomas,* 278 F.3d

8    at 958 ("[T]he ALJ must make a credibility determination with findings

9    sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily

10   discredit claimant's testimony."). "The clear and convincing [evidence] standard

11   is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759

12   F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278

13   F.3d 920, 924 (9th Cir. 2002)).

14   In making an adverse credibility determination, the ALJ may consider, *inter*

15   *alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the

16   claimant's testimony or between his testimony and his conduct; (3) the claimant's

17   daily living activities; (4) the claimant's work record; and (5) testimony from

18   physicians or third parties concerning the nature, severity, and effect of the

19   claimant's condition. *Thomas*, 278 F.3d at 958-59.

20

In discrediting Plaintiff's symptom claims, the ALJ found that the objective medical evidence did not support the degree of physical or psychiatric limitation alleged by Plaintiff.  Tr. 24.  Because the medical evidence was not properly evaluated, on remand the ALJ should also reconsider the credibility finding. Whether a proper evaluation of the medical opinions can be reconciled with the ALJ's existing adverse credibility determination is for the Commissioner to decide in the first instance.

## REMEDY

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court.  *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989).  An immediate award of benefits is appropriate where "no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed," *Varney v. Secretary of Health & Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988), or when the delay caused by remand would be "unduly burdensome," *Terry v. Sullivan*, 903 F.2d 1273, 1280 (9th Cir. 1990).  *See also Garrison*, 759 F.3d at 1021 (noting that a district court may abuse its discretion not to remand for benefits when all of these conditions are met).  This policy is based on the "need to expedite disability claims." *Varney*, 859 F.2d at 1401.  But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ

would be required to find a claimant disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

In this case, it is not clear from the record that the ALJ would be required to find Plaintiff disabled if all the evidence were properly evaluated. As discussed *supra*, the ALJ credited inconsistent opinions regarding mental health limitations; thus, the ALJ needs to address that conflict on remand. Further proceedings are necessary for the ALJ to properly consider the medical opinions, properly determine Plaintiff's credibility regarding his symptom reporting, and formulate a new RFC. The ALJ may also need to supplement the record with any outstanding medical evidence and elicited testimony from a medical, psychological, and vocational expert.

## CONCLUSION

**IT IS ORDERED:**

1. Plaintiff's motion for summary judgment (ECF No. 19) is **GRANTED in part**, and the matter is **REMANDED** to the Commissioner for additional proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

2. Defendant's motion for summary judgment (ECF No. 20) is **DENIED.**

1    The District Court Executive is directed to file this Order, enter

2  **JUDGMENT FOR THE PLAINTIFF**, provide copies to counsel, and **CLOSE**

3  THE FILE.

4    DATED this 17th day of March, 2017.

5                              _s/Mary K. Dimke_
                              MARY K. DIMKE
6                    UNITED STATES MAGISTRATE JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20